## STOUT v. LEWIS ET AL.

(June 24, 1929. Opinion and Decree.)
(November 4, 1929. Writ of Certiorari and Review Refused by Supreme Court.)

J. C. McGee, of New Orleans, amicus curiae.

Wm. A. Porteous, of New Orleans, amicus curiae.

Andrew Booth, M. C. Scharff and Eugene Thorpe, of New Orleans, attorneys for plaintiff, appellant.

lvy Kittredge, of New Orleans, attorney for John A. Lewis, defendant appellee.

Miller, Miller & Fletchinger, of New Orleans, attorneys for Christian Hahn, defendant, appellee.

WESTERFIELD, J. Plaintiff sues Christian Hahn and Dr. John A. Lewis in solido, claiming $30,000 as damages for physical injuries suffered by his 18-year old minor son, John Stout, Jr., as the result of a collision between an automobile belonging to Hahn, and an automobile belonging to Dr. Lewis. There was judgment below in favor of both defendants dismissing plaintiff's suit. Plaintiff has appealed.

The accident occurred at the intersection of Birch Street and Carrollton Avenue. The Hahn car was driven by Christian Hahn, Jr., the defendant Hahn's minor son, for whose negligence the defendant Hahn is responsible. Sutton vs. Champagne, 141 La. 469, 75 So. 209. It was a 7-passenger Studebaker and was occupied by six young men, three of whom were inside and three outside on the running board, John Stout, Jr., whom, for convenience, we shall hereafter refer to as plaintiff, being one of the three on the running board.

Hahn, Sr., had requested his son to drive the car to his place of business for the purpose of taking him to a prize fight, and, in compliance with that request,

the young man left his home about 7:30 p. m., and invited the other young men to ride with him a part of the way. It was the intention of plaintiff and that of the other two young men on the running board to alight from the car near the point where the accident happened, in order to attend a picture show in that vicinity.

The Hahn car had crossed the upper roadway of Carrollton Avenue and the car tracks and had made a three-quarter turn into the lower roadway when struck by the Lewis car. The Lewis car was proceeding along the lower or downtown side of Carrollton Avenue in the direction of the basin, the direction in which the Hahn car intended to proceed after having completed the turn. The impact of the collision was not very severe since the damage to each car was very slight, the Lewis car being repaired at an expense of $5. However, it was sufficiently violent to throw young Stout off his balance and on to the pavement, breaking his leg.

After carefully considering the evidence bearing on the question of fault of the drivers of the colliding automobiles, as contained in the voluminous record, we have reached the same conclusion in this regard as the trial judge, and find the Hahn car at fault for the failure of its driver to observe the provisions of the City Ordinance. We refer to Section 7, of the Traffic Ordinance, No. 7490 C. C. S., particularly sub-divisions "c" and "d" thereof, which read as follows:

"(c)  On all other streets, and at intersections of right-of-way streets with one another, all vehicles approaching intersecting streets from the left shall give right-of-way to vehicles approaching from the right.

"(d)  On streets and avenues having neutral grounds and carrying street car lines, vehicles crossing such neutral grounds shall have right-of-way to complete the crossing of the roadway of such street or avenue under the following conditions:

"Provided the vehicle shall come to a full stop when about to leave the neutral ground and enter the roadway, shall signal with horn, and give opportunity for approaching vehicles in the roadway to come to a stop; it being the intention of this provision to require vehicles in said roadway to stop upon receiving reasonable warning in order that vehicles standing on the neutral ground shall be permitted to complete the crossing of or turning into the roadway."

It is conceded that the Hahn car did not stop in crossing the neutral ground and did not signal with its horn, but it is contended that the purpose of the quoted provisions of the ordinance is to give the vehicles crossing the neutral ground the right-of-way when the driver observes the precautions referred to, and that the failure of the driver to signal with his horn and stop can have no other effect than to leave the right of way with vehicles approaching the intersection in the roadway. Assuming that the ordinance will bear this narrow construction, its application to the circumstances of this would nevertheless result in a finding of negligence on the part of the driver of the Hahn car, for the reason that it was its duty to have respected the right-of-way of the Lewis car and not dispute the crossing with it.

We are inclined to the view, however, that the intention of the quoted section of the ordinance is to require vehicles on the neutral ground either to sound their horn as a warning of their intention to proceed, or to stop and await the clearing of traffic in the roadway before entering.

We also agree with the trial judge in finding the Lewis car without fault. The evidence concerning his excessive speed is not satisfactory, and, while his testimony indicates that he was somewhat confused, this circumstance is not sufficient to discredit his testimony. He had a right to assume that the Hahn car would observe the city ordinance, and when he discovered the contrary it was too late to stop his car in time to avoid the collision.

There remains for consideration the question of the contributory negligence of the plaintiff. Both defendants have pleaded contributory negligence, but since we have found the Lewis car without fault, it is only of interest in connection with the liability of the defendant Hahn. Article 8, sub-section 2 of the Traffic Ordinance reads as follows:

"No person shall ride on the running board or fenders of a vehicle or hang on or hitch on the rear of any vehicle."

The plaintiff was, therefore, negligent in riding on the running board. Can his negligence be said to be the proximate cause of the accident? Shick vs. Jenevin, 145 La. 334, 82 So. 360; Manceaux vs. Hunter Canal Company, 148 La. 97, 86 So. 665.

In Berry on Automobiles, 6th Ed., Vol. 1, page 480, we read the following:

"A child, even of tender years, who trespasses on the running board or other part of an automobile in the highway, is entitled only to the duty owed to a trespasser; i. e., the duty on the part of the operator not to injure him wilfully or wantonly and the duty to take proper precautions against injuring him after discovering his presence."

But, in this case, the plaintiff was not a trespasser but was a guest of the defendant Hahn, and he was on the running board with the knowledge and consent of the driver of the Hahn automobile. The defendant's relation to plaintiff was that of a private gratuitous carrier. He was obliged to exercise ordinary care to prevent plaintiff's injury.

That plaintiff was guilty of negligence in assuming a position on the running board of defendant's car in violation of the City Ordinance cannot be gainsaid, and, it might be said that were it not for his negligence in riding upon the running board, the collision with the Lewis car, though due to the negligent operation of the Hahn car, would not have caused the injury of which he complains. In other words, if he had been inside of the car the collision was not sufficiently violent to have injured him.

A superficial consideration of the subject would lead us to this result. Indeed our first impression of plaintiff's conduct was fatal to his recovery, being largely influenced by the perilous position voluntarily assumed by him in violation of the traffic ordinance. But, upon reflection, we are convinced of the error of this view.

The negligence of the plaintiff in this case, as affecting his right to recover, his contributory negligence involved the assumption of the risk and peril incident thereto. He assumed the risk of his dangerous position. If it may be said that his injuries were the natural consequences of the risk he assumed, he cannot recover.

It is not sufficient to say that he would not have been hurt if he had not been on the running board, because he might have remained upon the running board until he had reached his destination without injury but for the negligent management of the car, on the running

board of which he was riding, a risk which he did not assume. Whatever danger may have been involved in riding upon the running board, and such risk as would ordinarily be incident thereto, in the ordinary and usual operation of defendant's automobile, were assumed by the plaintiff. But plaintiff was a passenger and defendant owed him the duty of ordinary care, an obligation he was not relieved of by plaintiff's carelessness.

In Gornstein vs. Priver, 64 Cal. App. 249, 221 Pac. 396, the Court of Appeal for California, in a very well considered case, held that a passenger seated in a truck with her legs hanging over the end with the owner's tacit approval and consent, did not assume the risk of danger created by the negligence of the owner's driver and she was held not to be contributorily negligent. We quote from that opinion:

"If plaintiff was imprudent in seating herself as she did, then, while she may be deemed to have assumed all the risks of danger ordinarily incident to such position of peril, she did not assume the risk of danger created by the negligence of defendant's drivers in their operation of the trucks. Her position on the truck, however perilous it may have been, was taken with defendant's tacit approval and consent, and it did not dissolve the contract of carriage. It did not sever plaintiff's relation of passenger to defendant as a private carrier for hire. Nor did it relieve defendant from that duty of protection which he owed plaintiff as a passenger on one of his trucks. For her safety while she was such passenger, defendant owed plaintiff the right to ordinary care on the part of his servants; that being the degree of care which is due by a private carrier for hire and was the degree of care which plaintiff was entitled to demand and to expect. In other words, though she assumed all the risks ordinarily incident to the position in which she seated herself on the truck, whether it was known to her to be dangerous or not—such risks, for example, as might be due to the ordinary and usual swaying of the truck or its ordinary and usual movements—still she did not forfeit her right to exact from defendant and his servants the same care to which she would have been entitled had she taken the safest seat on the vehicle. See Willmott vs. Corrign, etc., Ry. Co., 106 Mo. 535, 17 S. W. 490. Had plaintiff sustained injury solely because of the position in which she had seated herself, and without any negligence on the part of defendant's drivers in their operation of the trucks, she probably could not have recovered any damages from defendant. Thus, for example, if, during the usual and ordinary movements of the truck on which she was riding and without any negligence on the part of defendant's drivers in their management of the machines, plaintiff, solely by reason of the position which she had taken, had been bounced off the truck, she probably would have had no remedy against defendant, for the very good reason that in that case she would have to attribute her injury solely to her own voluntary conduct. That would be one of the risks ordinarily incident to plaintiff's position on the truck. But, while assuming risks of that character, plaintiff did not assume the risk of danger created by the negligent misconduct of defendant's drivers; and for injury caused by such misconduct defendant is liable."

See also Robinson vs. American Ice Co., 292 Pa. 366, 141 Atl. 244.

If the plaintiff, in the instant case, had been jolted off the running board by reason of some unevenness in the roadway, while the automobile was being driven in the customary way, we would say that he could not recover for any injuries he might have sustained, because he had assumed the risk involved. But, on the other hand, he had a right to rely upon the proper discharge of defendant's duty to him and was not obliged to anticipate negligence on the part of the driver of the Hahn automobile. The following quota-

tion from Ruling Case Law cited in the case of Gornstein vs. Priver, supra, is declarative of the principle referred to:

"While a person who asserts a right to recovery on the ground of negligence must be prepared to show that he exercised vigilance to discover and avoid the danger embodied in the offending instrumentality, he excuses himself for an omission to take active measures—such as looking, listening and making inspections —by proof that the defendant owed to him a duty of care, and that he relied upon the performance thereof. The presumption is that duties fixed by law or custom will be discharged in due form; and every one to whom a duty is due has a right to assume that it will be performed—he need not anticipate negligence on the part of his obligor, even though the latter has been negligent on other occasions."

20 R. C. L., title: Negligence, sec. 101.

See also Wright vs. Foreman 86 Cal. App. 595, 261 Pac. 483; Rignell vs. Font, 266 Pac. 590.

Our conclusion is that the defendant Hahn is responsible for plaintiff's injury and that plaintiff should recover.

As to the quantum of damages, the injuries to plaintiff's son are thus described by his physician:

"A compound comminuted fracture of both bones of the left leg with loss of bone substance from the tibia which subsequently developed an infection and injury to the nerves with production of ulcers; there was regeneration of the majority of the bone substance. There still persists an ulcer on the heel which is very resistant to treatment. There is still over the tibia, which for a time had a tendency to break down, but which has remained healed for several months. The sensation has returned, which indicates that the nerve was not completely severed, but was sufficiently injured to produce atrophic disturbance. There is limitation of the motion of the angle and there is still some contraction of the toes as the result of this injury to the nerves."

He was confined to the hospital for six months. We will allow $3500.

For the reasons assigned the judgment appealed from insofar as it is in favor of the defendant, Christian Hahn, is reversed and it is now ordered, adjudged and decreed that there be judgment in favor of John S. Stout, on behalf of and for the use and benefit of his minor son, John S. Stout, Jr., and against Christian Hahn, in the full sum of $3500. In all other respects the judgment appealed from is affirmed.