HERGET, Judge.
Plaintiff, Homer R. Jones instituted suit for alleged damages sustained by him against Tony Spitale and his liability insurer, General Fire and Casualty Company. Though in his suit Plaintiff prays for judgment against both defendants, judgment was rendered solely against General Fire and Casualty Company for the sum of THREE THOUSAND FIVE HUNDRED SEVEN AND 70/100 ($3507.70) DOLLARS, together with interest and costs. From this judgment Defendant, General Fire and Casualty Company, perfected this suspensive appeal.
The evidence reflects that on December 5, 1962 Mr. Tony Spitale went to the home of Homer R. Jones, Plaintiff, for the purpose of making a collection on a note owed to him by Mr. Jones. Jones agreed to give Spitale a cow as a dation en paiement. A rope was fastened around the cow’s neck. Spitale had backed his truck to a mound of ground utilized for loading purposes and was leading the cow to this destination when suddenly the cow became obstreperous, nudged Spitale and he let go the rope with which he was holding her. The cow ran down Bennett Road, a gravelled road in this vicinity. Thereupon, Jones and Spitale proceeded some seventy-five feet to the point the truck was parked to enter same for the purpose of overtaking and capturing the cow. Some discussion arose as to who was to drive. However, Spitale, to whom the truck belonged, entered the driver’s seat but Jones did not enter the truck. Before Spitale started the motor Jones assumed a position on the left running board with his right hand grasping the stock frame and his left hand and arm holding onto and resting on the door. In such position Jones was standing on the running board with his face toward the driver. Upon assuming these positions they proceeded down the road in an attempt to- *663 overtake and capture the cow. They traveled an estimated distance of an eighth of a mile before drawing close to the cow. The speed of the truck was estimated at that time to be some twenty to twenty-five miles per hour.
The evidence is conflicting as to the procedure to be utilized by Mr. Spitale in the operation of the vehicle. There were only two witnesses to the accident, Mr. Jones and Mr. Spitale.
Mr. Jones testified:
“A I told him when he when he got — ■ just before he got to the cow — I said pass the cow and stop and I will head it and then you can go and turn and come back and we will load her right here. Well, when he got about even with her he got excited, I reckon, throwed on the brakes.”
Mr. Spitale testified:
“A * * * I passed the cow on the left hand side and the cow was on the right hand side and when I passed he hollered at me — said, Tony, you done passed the cow — he said, stop. Of course, while I was excited I jammed on the brakes pretty hard and as I stopped, the door flew open and he rode the door on out until the door must have hit that — you know — it hit that other end and couldn’t go no further and it kind of bounced and he fell off.” (Italics ours.)
As shown in this answer by Mr. Spitale Mr. Jones fell from the running board. In consequence of the fall Jones sustained the injuries for which he- seeks recovery.
The negligence attributed to Spitale by Plaintiff is found in paragraphs 10 and 11 of his petition, reading as follows:
‘TO. That when Tony Spitale drew abreast of said cow, he applied the brakes suddenly in a negligent manner causing the truck to come to a sudden stop.
“11. That when Tony Spitale suddenly and negligently stopped the truck the door on the driver’s side flew open because of the negligent closing of Defendant, or in the alternative, because Defendant opened the door before the vehicle came to a full stop.”
Defendants deny any negligence on the part of Spitale and maintain the accident was due solely to the negligence of Plaintiff in riding on the running board; in failing to hold on securely so his position on the running board would be made more safe; in holding onto the handle of the door, which caused the door to open when the truck was stopped; in placing himself in a dangerous and precarious situation when he knew or should have known of the danger attendant thereto; in riding on the running board of a moving vehicle on a public highway in violation of the provisions of LSA-R.S. 32:284; and, alternatively, in the event Spitale was chargeable with negligence, Jones was guilty of contributory negligence and assumption of risk.
In Jones v. Indemnity Ins. Co. of North America, La.App., 104 So.2d 197, at page 199, the Court of Appeal, Second Circuit, said:
“The Motor Vehicle Regulatory Act of this state declares : ‘No person shall be allowed to ride on running boards, fenders, or rear racks of motor vehicles.’ LSA-R.S. 32:249. Resting largely upon the provisions of this statute there have been a number of instances where the appellate courts of this state have held the act of riding on a running board constitutes contributory negligence. Robinson v. Miller, La.App.1937, 177 So. 440; Barnes v. Maryland Casualty Company, La.App. 1940, 197 So. 639. Although the statute has prohibited parties from being allowed to ride on running boards, fenders or rear racks of motor vehicles, recovery has been allowed in certain cases because the circumstances which gave rise to the claim indicated the *664 negligence of the defendant motorist was the sole proximate cause of the injury. Fidelity Union Casualty Company v. Carpenter, 1929, 12 La.App. 321, 125 So. 504; Cosse v. Ballay, La.App.1933, 149 So. 285; Jackson v. Young, La.App.1957, 99 So.2d 400. The duty of observing care rests upon both the driver and his guest passenger riding in an unusual position.”
In Matlock v. Allstate Insurance Company, La.App., 155 So.2d 484, at page 489, the Court of Appeal, Third Circuit, said:
“The jurisprudence of Louisiana appears to be very clear on the rights of 'out-riders’ on vehicles. A person classified as an ‘out-rider’ assumes such risk as might cause him injury while the driver is operating the vehicle in a reasonable and prudent manner— that is, he assumes those risks which would ordinarily be incident to his precarious position on the vehicle. Brown v. Waller, 8 So.2d 304 ([La.App.] 1942) and Jones v. Indemnity Company of North America, 104 So. 2d 197 ([La.App.] 1958).”
In Keowen v. Amite Sand & Gravel Co., La.App., 4 So.2d 79, at page 84, answering a charge of negligence attributed to a party injured while riding on the left front fender of a vehicle stemming from negligence of the driver of another vehicle, we said:
“The same reasoning applies in disposing of the charge of negligence against Carroll Keowen for riding the left front fender, and moreover whilst in doing so he may be said to have assumed the risks incidental to the operation of the car by the one who was driving it, he did not assume the risks of the dangers created by the reckless, careless and negligent driving of the truck which ran into him. The pleas of contributory negligence were properly overruled and plaintiffs are therefore entitled to recover.”
In Knight v. Thomas, La.App., 141 So.2d 134, at page 139, we adopted as our own the-definition of contributory negligence, taken-from Words and Phrases, Vol. 9, page 706„ as follows:
“ 'Contributory negligence’ may be either an intentional and unreasonable exposure to danger created by defendant’s negligence, of which danger plaintiff knows or has reason to know, or conduct which in other respects falls, short of the standard to which a reasonable man should conform in order to protect himself from harm. Wertz v. Lincoln Liberty Life Ins. Co., 41 N. W.2d 740, 744, 152 Neb. 451, 17 A.L.R.. 2d 629.”
Though the petition charges negligence to Spitale in opening the door of the vehicle before same came to a full stop the evidence does not reflect this fact to have been proven. Spitale denied having done so and Mr. Jones did not testify that he did. True, the door did open. However, it is possible same could have been caused by Plaintiff grasping the handle in a desperate attempt to hold on when Spitale rashly braked the vehicle.
In our opinion the resolution of this case depends upon (1) the determination-of whether the accident resulted solely through the negligence of Spitale in suddenly braking the vehicle, if in fact Spitale was negligent in this respect, and (2) whether Jones was guilty of contributory negligence in assuming the perilous position in which he placed himself with full knowledge of the procedure to be followed.
Without question, Spitale was grossly negligent knowing of the presence of Plaintiff in his precarious position on the running board to, as he admittedly did, j am his brakes and bring the vehicle to a sudden unanticipated stop from an estimated speed of twenty-five miles per hour. We believe this act on the part of Spitale to be grossly negligent and the proximate *665 cause of the resulting injuries sustained by Plaintiff, e
In answer to the question as to the contributory negligence on the part of Plaintiff, the citations of authorities, supra, place upon the out-rider assumption of those •risks which would ordinarily be incident to 'his precarious position on the vehicle. .Plaintiff, in assuming the position which he •did for the purpose of undertaking the ■capturing of the cow had no reason to .anticipate Spitale would jam the brakes of the vehicle and bring the car to a sudden •stop as was done, as such action was not •one to be contemplated as essential to •effectuate the purpose of the mission on •which they were engaged. Accordingly, ‘.the plea of contributory negligence is rejected.
Without assigning written reasons, the 'Trial Judge awarded the total sum of $3,--507.70. Special damages consisted of $127.-.'70 for the hospital bill, $800.00 for wages paid to operate Plaintiff’s dairy during his disability, $80.00 for trips to Lallie Kemp 'Charity Hospital at Independence, Louisiana, or a total of $1,007.70. Deducting this figure from the total award leaves a balance •of $2500.00 for pain and suffering. Appellant does not seriously question the award for special damages but maintains the award <of $2500 for pain and suffering is excessive.
Plaintiff, a 66-year old man, sustained a fracture of the medial malleolus, necessitating an ankle cast which he wore ■for some two and a half months. Subsequent to the removal of the cast Plaintiff was required to use crutches for weight hearing. According to the evidence it was first necessary to place a leg cast up to Plaintiff’s hip and subsequently he was ■supplied with a short leg cast which was Temoved on February 16, 1963, he having been originally admitted to the hospital on December 6, 1962. On October 11, 1963 he still complained of pain in his foot and found it necessary to walk with a stick. He was apprehensive about falling and placing any additional weight on his ankle. During the course of the treatment it was necessary to give him sedatives for his pain. He sustained the usual discomforture and itching attendant to the wearing of a cast. From the evidence it appears Plaintiff sustained a painful injury and in our opinion the award of $2500.00 therefor is warranted, noting, the injuries which Plaintiff sustained are comparable to those considered by us in Brantley v. City of Baton Rouge, La.App., 98 So.2d 824, in which an award of $2500.00 was granted.
Affirmed.