TUCKER, Judge:
On October 24, 1968 about 3:15 P.M. Bryan Fehr, the 15 years old son of the defendant W. Fehr, was driving his father’s 1964 model one-half ton Ford pickup truck in an easterly direction on Myrtle Street, Baker, Louisiana. There were two passengers in the cab of the truck, and three young boys riding in the bed of the pickup, two of whom were perched opposite each other on the metal sides of the truck bed, each of these young men holding baritone horns, and the other youngster was seated in the truck bed proper with a tenor bass drum about two feet in diameter also ensconced on the bed floor. When the Ford pickup reached a point variously estimated by the witnesses to have been one-half block, two to three car lengths back, and as little as twenty feet from the intersection of Myrtle and Harding Streets, the vehicle stopped either because several of the young people who were walking from Baker High School to Baker Elementary School, a distance of some two and one-half to three blocks, called to young Fehr, asking for a ride to the elementary school, or on account of the traffic preceding the truck being stopped. In any event several of the young folks got onto the bed of the pickup, with three of the individuals unable to reach the truck bed and having to resort to the rear bumper as a perch and holding to the tail gate as a means of steadying themselves.
At that time there was a considerable number of the students from Baker High walking or riding to Baker Elementary, estimated to number between one hundred fifty and two hundred such students, all of whom planned to participate in band practice or pep squad routines. All of the children involved here were either band or pepster members. The evidence shows that the point where the young people hitched their rides with Bryan Fehr was distant some one to one and one-half blocks from their eventual destination at Baker Elementary. The testimony is in dispute with respect to whether any of the newly acquired truck passengers shouted a warning to Fehr that he should not start the pickup because everyone wanting a ride had not managed to gain the truck bed. The witnesses are nearly in unison that such shouts were emitted when the three young ladies, Deborah Piper, Melissa Blackburn and Loretta Jolibois, fell off the rear bumper when Fehr made a left turn from Myrtle into Harding Street. The evidence does not establish that young Fehr was informed or had knowledge that any of the girls were standing on the rear bumper of the truck. There is substantial conflict in the testimony in regard to the reason why Misses Piper, Blackburn and Jolibois failed to get aboard the bed of the truck. Several of the witnesses ascribed as the cause that the bed of the truck was fully filled with the original passengers, the musical instruments, and the influx of the additional passengers at the point on Myrtle Street. Other witnesses said the failure of the three young ladies to reach the truck bed was due to the fact that young Fehr drove off too rapidly for these three individuals to get inside the bed of the pickup.
A short time before the trial of the case Miss Piper married John Michael Lowrance and thus occupied the status of an emancipated minor. In advance of trial she petitioned the lower court to be substituted as a party plaintiff in lieu of her father insofar as her claims for damages on account of her bodily injuries, pain and suffering and residuals were concerned. An order allowing this substitution was granted and signed.
The trial judge, after hearing the case on the merits, assigned written reasons for judgment in which he reasoned that the plaintiff, Deborah Piper Lowrance, was contributorily negligent to the extent of riding on the “tailgate” of the Ford Pickup in contravention of the provisions of LSA-R.S. 32:284(B), “and that the overwhelming weight of the testimony showed no negligence on the part of young Bryan Fehr.”
*165 A judgment dismissing plaintiffs’ suit was signed on March 18, 1971. The plaintiffs timely perfected their appeal from this judgment. We concur in the decision of the lower court and will affirm its judgment.
By way of specification the appellants claim that the trial court was manifestly erroneous in failing to hold that Bryan Fehr was negligent; in surmising that the trial court did not find that Deborah Piper Lowrance was contributorily negligent, but, if there was such a holding, the lower court was manifestly erroneous in so holding, and that, alternatively, if the record reveals contributory negligence or assumption of risk on the part of the now Mrs. Lowrance, such was not a proximate cause of the accident and should not bar her recovery.
Both counsel in brief rely upon LSA-R. S. 32:284(B) as being supportive of their opposing positions. This statutory proviso is quoted as follows :
“No person shall be allowed to ride on running boards, fenders, ■ tail gates, or rear racks of motor vehicles while moving upon a highway of this state, provided, that this section shall not apply to emergency and public sanitation vehicles.”
Of course, the foregoing statutory enactment is of no solace to the appellants unless the proof establishes the contributory negligence of Mrs. Lowrance in riding on the rear bumper while holding onto the tail gate, a precarious position for a vehicle passenger deraigned by the statute, was overcome and surmounted by the negligent, reckless and careless operation of the pickup truck by young Fehr, who would have had knowledge of the dangerous and precarious position of Mrs. Lowrance. If Bryan Fehr had notice or knowledge of the precarious location of Mrs. Lowrance on the back bumper, and he had operated the pickup truck in a reckless and careless manner such as at an excessive rate of speed, then the prime and proximate cause of the accident would rest with young Fehr. In this case the proof shows neither of these circumstances to be the case. The evidence establishes to the contrary, that is, that young Fehr did not know Mrs. Lowrance was situated on the back bumper, and he was traveling at a safe rate of speed without deviation from his responsibility as a motor vehicle driver.
The case of Matlock v. Allstate Insurance Company, 155 So.2d 484, (La.App.3d Cir. 1963) lays down the following rule:
“The jurisprudence of Louisiana appears to be very clear on the rights of ‘out-riders’ on vehicles. A person classified as an ‘out-rider’ assumes such risk as might cause him injury while the driver is operating the vehicle in a reasonable and prudent manner — that is, he assumes those risks which would ordinarily be incident to his precarious position on the vehicle. Brown v. Waller, 8 So.2d 304 ([La.App.2d Cir.] 1942) and Jones v. Indemnity Company of North America, 104 So.2d 197 ([La.App.2d Cir.] 1958).”
In the Jones case, supra, the court there depicted that, though the jurisprudence had denounced in a number of instances the riding on the running board as constituting contributory negligence, recovery has been allowed in some cases because the circumstances of the particular case, which gave rise to the claim, reflected that the negligence of the motorist was the sole proximate cause of the injury. The facts of the instant case do not justify the application of the exception to the general rule.
The case of Jackson v. Young et al., 99 So.2d 400 (La.App.1st Cir. 1957) involved facts where the court recognized the innate negligence of a person sitting on the narrow side of a pickup truck and his assumption of risks such a position would ordinarily entail, but pointed out that such a passenger did not assume the risks of the *166 driver who was negligent in driving too fast under the circumstances, in skidding on loose gravel and shifting into second gear so that the truck whipped around.
The plaintiffs maintain, however, that it was the duty of the driver Fehr to determine if all of the prospective passengers had gained a safe place in the bed of the pickup before he drove away, and if his view to the rear was obstructed by the passengers in the bed of the truck, young Fehr should have alighted from the driver’s seat, and taken a position so he could observe if all of the young people had gained a place of safety. This perhaps would have been his duty had he known or suspected that there were riders on his rear bumper.
The testimony shows that the Fehr pickup stopped at a point, about a half block, before the intersection. At that point several young people loaded into the bed of the truck, joining the three students who were already therein. The evidence reflects that it was unknown to young Fehr that the plaintiff and her two friends were situated on the bumper holding onto the tailgate, or, for that matter, that he had any cause to suspect their presence on the bumper. The facts simply do not import merit to plaintiff’s argument that young Fehr violated the subject statute. Thus, the record does not support a finding of negligence, constituting a cause of the accident, attributable to Bryan Fehr.
Plaintiffs have failed to sustain the burden of proving their case, and there is no proof that the negligence of Mrs. Lowrance in assuming the dangerous and precarious position on the rear bumper of the truck has been negated as a contributing factor to the accident, because of any negligent operation of the Fehr vehicle.
We can find no manifest error in the finding of fact by the trial court, and the judgment of the lower court will be affirmed at plaintiff-appellants’ costs.
Affirmed.